IMPERIAL SHIRT CORPORATION

*v.*

WILLIE C. JENKINS.

399 S.W.2d 757.

(*Nashville,* December Term, 1965.)

Opinion filed January 5, 1966.

WARD DeWITT, JR., Nashville, for plaintiff in error, TRABUE, MINICK, STURDIVANT & HARBISON, Nashville, of counsel.

RICHARD A. JONES, Nashville, for defendant in error, WARFIELD & ENTREKIN, Nashville, of counsel.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation suit wherein the only question involved is whether or not the one year statute of limitations, T.C.A. sec. 50-1003 and sec. 50-1017, is applicable. The trial judge held that the action was not barred by the statute. We thus have the appeal of the employer. The question has been ably briefed and argued, and, after considering all the cases cited and making an independent investigation of the matter, we are now in a position to decide the case.

The accident to the employee happened on December 20, 1961, and the action herein was commenced by the filing of a summons and a petition on November 12, 1964. At the time of the accident Jenkins was in the

process of tilting a large box when he heard something slip or pop in his back. On the same day, he consulted the plant nurse who sent him to a local hospital where he was seen by a doctor. This doctor advised him to return for heat treatments which he did on one or two occasions within the space of a week or so after the accident of December 20th. Thereafter, he continued on his regular job for approximately two years. During the first year he missed only an occasional day from work because of his back. There were times when his back bothered him and times when he was free of pain. He next saw a doctor in the spring of 1963 when he consulted a chiropractor in Bowling Green, Kentucky. Thereafter he saw another doctor, a general practitioner in the town wherein he lived, who referred him to Dr. George Carpenter, an orthopedic specialist in Nashville. Upon recommendation of Dr. Carpenter and an associate of his, he spent a period of five days in the Baptist Hospital and an additional week at home prior to returning to work. This all happened in the spring and early summer of 1963. A series of x-rays were taken but no diagnosis of the difficulty was made at that time. Thereafter, he returned to work, but his condition was little better and his back became increasingly more painful until he was again referred to a Nashville specialist by a local doctor. This time he was referred to a neurosurgeon, who after the performance of a myleogram, was definitely able to diagnose his condition as a herniated nucleus pulposis.

An operation was performed on February 10, 1964, and the ruptured disc repaired. Petitioner remained in the hospital for eleven days and was thereafter required to be off from work until about May, 1964. When he

returned to work in May, he was told there was no work available and was given an unemployment slip.

The testimony of this last specialist who examined him is to the effect that he diagnosed his condition on January 24, 1964, as above indicated, and that this was confirmed by a specialized type of diagnostic procedure. This specialist found the petitioner to be suffering a twenty (20%) per cent permanent disability to the body as a whole; he found that the employee had a residual atrophy in the leg, leaving his left low extremity some three centimeters smaller than his right. He was found to have weakness and discomfort in his legs and a limitation of movement and discomfort in his back and low back. This doctor also testifies that it was not uncommon for a herniated nucleus pulposis of this type to go undiagnosed for a period of years and that it was not at all certain that such a diagnosis could have been made immediately following this accident because certain key symptoms were apparently not present. This doctor likewise testified that it was not uncommon for a person to continue working although having suffered a herniated disc and that the pain experienced with such injuries varies with periods of increased pain and periods of relative improvement.

Under such a state of facts the trial court found, as follows:

"The Court finds that the petitioner was injured on December 20, 1961, while in the scope of his employment and although the petitioner knew that he suffered an injury of some kind and a disability it was not known or actually diagnosed until February 4th, 1964, * * * The Court finds that the injury resulted in damage to the left leg, I believe the doctor said the left leg

is three centimeters smaller than the right leg. Dr. Cobb estimates this disability at 20 per cent permanent disability to the body as a whole. The Court finds that the petitioner is disabled to that extent that 20 per cent.''

Thus it is, that the question of whether or not the limitation statute as applied in Workmen's Compensation cases (T.C.A. sec. 50-1003 and sec. 50-1017) is applicable. In *Griffitts v. Humphrey*, 199 Tenn. 528, 288 S.W.2d 1, we found that these two Sections must be construed together and that they must be liberally construed so that the limiation of one year begins to run from the time of commenceability of loss rather than the time of the accident. In other words, we found under applicable statutory rules of construction these two statutes should be taken together and since the statute, T.C.A. sec. 50-1017, was a later enactment and for other reasons stated in the *Griffitts* opinion this one was the applicable statute to apply in considering the limit in these Workmen Compensation cases. In other words, we arrived at the conclusion that this was not just a limitation period from the accident but was a limitation period from the injury. Mr. Larson in his excellent work on Compensation, Vol. 2, sec. 78.41, page 261, has this to say in regard to the interpretation there given to such statutes:

''Yet the great majority of courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.''

In the same Section at page 262, he says this:

"A *fortiori,* his claim should not be barred when quali-
fied physicians have been unable to present him with a
diagnosis of his condition within the period of limita-
tions."

The record in the present case shows that this man
after this injury worked on for approximately two years
but did go to doctors who merely administered heat
treatments. He went to two or three different kind of
doctors and specialists and none of them found out what
was the matter with him until the date the trial judge
found the statute started to run, January 24, 1964. Thus
it is that these statements of Mr. Larson become appli-
cable.

Mr. Larson at sec. 78.42, page 263, of this same Vol-
ume, has this to say on the question here involved:

"Twenty-two states date the claim period from the
'accident'; most of the rest date it from the 'injury'.
Under the 'injury' type of statute, there is now almost
complete judicial agreement that the claim period runs
from the time compensable injury becomes apparent."

As said above, we in *Griffitts* decided under our statutes
the "injury" period is the applicable theory upon which
our statutes were enacted. Mr. Larson discusses the
questions here involved at length, especially under the
"accident" type of statute, and says that the argument,
of course, that there should be a definite period to deter-
mine when the right of action begins and that under the
"accident" type it is the date of the accident, and the
argument is if you have the "injury" type statute it
would be too indefinite and as a result many questionable
claims would be presented, and he says:

"The answer is that claimant must still prove his case, including work connection and due care in discovering the nature of his injury. If this occasionally requires an employer to defend a claim based on an accident several years earlier, this inconvenience is not to be compared with the shocking injustice of refusing compensation for blindness because the claimant, through a technicality which involves no fault of his own, could never at any time have filed a valid claim." Sec. 78.42 (b), page 265 of Larson, supra.

He says, too, in the following Section, sec. 78.42(c), at page 265, that:

"Statutes dating the claim period from the 'accident' are wrong, and should be changed."

We in *Griffitts v. Humphreys,* supra, and other cases have changed the period to the "injury" type not necessarily by judicial determination but by accepting recognized standards in construing statute of the Legislature wherein the Legislature after enacting the first statute, T.C.A. sec. 50-1003, enacted many years later the provision in the other statute, T.C.A. sec. 50-1017, and this being a later statute certainly takes precedence over the first statute and is the applicable statute, which makes our statute of limitations the "injury" type and not the "accident" type. Thus, when we read the facts of this case we find clearly that the trial judge has adopted this theory and applied the "injury" type statute of limitations to this accident because the facts warrant his doing so.

█ The Workmen's Compensation Act contemplates liberality, not only in the admission of evidence, but also in the inferences to be drawn therefrom, and in border-

line cases the court will endeavor to carry out the benevolent object of the Workmen's Compensation Act and resolve doubts in favor of the claimant. This employee reported his accident immediately, was sent to a doctor, and the doctor didn't think there was much wrong with him and told him to strap up his back and do a few things like that, but his back continued to hurt off and on. He worked right on for a couple of years and did not discover that he really had an injury to his back, which injury was permanent to his leg as heretofore indicated, until long after the year had elapsed from the time that he had had the accident. There is no question of fraudulent concealment on the part of the employer, or the doctors or anything of the kind. The man just had what these doctors thought was a simple accident and he kept on working. They really didn't discover the injury until long after the time it had happened.

As we see it, under the well reasoned cases of this country and of our State, those cited in the *Griffitts* case, supra, and others, this clearly warrants the trial court in holding that the statute here didn't begin to run until the employee discovered that this permanent injury was connected with the accident which had happened subsequent thereto.

This man was an uneducated, ignorant type of person and he really had no knowledge about Workmen's Compensation or anything of the kind. Compensation, that is Workmen's Compensation, is not provided for pain, which this man suffered off and on, but compensation is for loss of wages and this man lost no wages until he went to the doctor who finally determined what was wrong with him and then when he went back to work he was given his dismissal, so to speak. It was then he first

realized that he was maybe entitled to some kind of compensation. Obviously, he could see no reason to make a claim or give notice or file suit or anything of the kind until after his wages were cut off, and he then determined that this accident had caused him this permanent injury.

Counsel for the plaintiff in error in his excellent brief cites a number of cases to this Court in which the argument is made that they are applicable to this case. Time will not permit our taking up each of these cases and showing that the facts of that particular case does not apply here. We have read all these cases several times, and participated in most of those decisions. Suffice it to say, the facts of none of the cases cited are comparable to the facts in the instant case except that some concerned back injuries, but the facts were so closely brought to the attention of the parties in each of those cases that the courts determined that the time of the accident was the determinative time because the party had notice at that time there was something wrong with him where he could have, and should have, filed his claim. The facts in the instant case do not so warrant, especially when the trier of facts has determined it as he did, after seeing and hearing all of the witnesses and knowing why this was not done. There is material evidence to support the trier of facts in this position, and this being true it merely comes down to a question of law for us under the facts found by him as to whether or not the statutes do apply. We agree with the trial judge that they do not.

For reasons herein expressed the judgment below must be affirmed.

## Opinion on Petition to Rehear

■ The employer has filed herein a very courteous, dignified and forceful petition to rehear. This petition

is largely based on the propositions, to-wit: (1) that the trial court allowed recovery for a doctor's bill, a hospital bill and two weeks' benefit to the employee which occurred well within the statute of limitations and prior to the time that the trial court found that the injury herein became compensable; and (2) that the case of *Pillsbury v. United Engineering Co.,* 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225, which construed the Longshoremen's and Harbor Workers' Compensation Act, as dating from the time of the accident rather than the time of the injury, was controlling.

After carefully considering these questions, our conclusion is that first the question of the doctor's bill and the hospital bill and the two weeks' compensation was not raised one way or the other in the trial court, nor was it before us in the original record. There was no objection in the trial court to the admission of these bills nor was the question for the allowance of these bills raised in the motion for a new trial and no assignment of error thereon was made to this Court. This being true, we naturally in working this record paid little heed to the date of said bills one way or the other, since as the matter was presented to us the only question involved was whether or not the one year statute of limitations applied as set forth in our original opinion.

These three items are now presented in a forceful argument on the factual situation that since they antedate the beginning of the year of the statute of limitations thus it must be determined that the accidental injury happened more than a year before the filing of the petition herein. We do not think these items are controlling especially due to the fact that there was no objection made to them when they were presented to the trial court and no question raised about them. Our determination of

this case was solely on the basis that a compensable claim dates from the time of the injury and not from the time of the accident as is fully discussed and set forth in our original opinion. Again the case of *Travelers Insurance Co. v. Jackson*, 206 Tenn. 272, 332 S.W.2d 674, is pressed as being authority against our conclusion in our original opinion, but by a careful re-reading of the Jackson opinion it will be found that the sole question determined in that case is determined exactly as we have determined this case, the Court therein saying:

"It appears that the applicable rule in all Workmen's Compensation cases is that the determinative starting point for the running of the statute is the occurrence of the injury rather than the happening of the accident."

Then the opinion is largely made up of quotations from *Pittman v. City Stores, Inc.*, 204 Tenn. 650, 325 S.W.2d 249, which factually differs entirely from the facts of this case. Thus it is as we read the Jackson opinion the same legal proposition is determined in the same way as is, and was, determined by the original opinion in this case.

The Pillsbury case, as said above, is a construction by the Supreme Court of the United States of the Longshoremen's and Harbor Workers' Compensation Act and is based on a determination by that Court of the construction of the Longshoremen's Act to the effect that the statutory limitations period runs from the time of the accident and not from the time of the injury as we construe our Act in this State, and is construed by a great majority of the States as shown in our original opinion.

After a careful consideration of this petition to rehear, it must be overruled.